IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

ALBERTO HIRIARTE RODRIGUEZ,

    Petitioner,

v.

WARDEN T. JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:17-cv-134

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Alberto Rodriguez ("Rodriguez"), currently incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1.)  Respondent filed a Motion to Deny the Petition, (doc. 5), to which Petitioner responded, (doc. 7).  For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Rodriguez's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Rodriguez *in forma pauperis* status on appeal.

## BACKGROUND

Under 18 U.S.C. § 3624(b)(1), inmates in the custody of the Federal Bureau of Prisons (the "BOP"), who are serving a term of imprisonment of more than one year, may receive up to 54 days of good conduct time credit annually towards their sentence.  An inmate may earn the full 54 days if the inmate "has earned or is making satisfactory progress toward earning a [general equivalency degree ("GED")] credential or high school diploma."  28 C.F.R. § 523.20(c)(1); see also 18 U.S.C. § 3624(b)(1).  If an inmate "has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma," then the maximum amount of good conduct time an inmate can earn is 42 days.  28 C.F.R.

§ 523.20(c)(2). An alien inmate who is "subject to a final order of removal, deportation, or exclusion" need not make progress toward a GED to be eligible for the full 54 days' annual good conduct time. 28 C.F.R. § 523.20(d); see also (Doc. 5-2 ("An inmate alien subject to a final order of removal, deportation, or expulsion will earn GCT at the annual rate of 54 days" subject to disciplinary disallowances.).)

Relatedly, under 18 U.S.C. § 3624(f)(1), "mentally capable inmates who are not functionally literate" are *required* to participate in a "mandatory functional literacy program." Inmates without a high school diploma or GED fall under this group and must complete a "minimum of 240 instructional hours or until a GED is achieved, whichever occurs first." 28 C.F.R. § 544.70. Participating in this literacy program also satisfies the "making satisfactory progress toward a GED credential or high school diploma" requirement under 28 C.F.R. § 523.20 for inmates to be eligible for 54 days' good conduct time.[1] Failing to enroll or complete 240 hours in the literacy program not only results in eligibility for only 42 days' good conduct time, but can also result in disciplinary action. (Doc. 5-2); 28 C.F.R. § 544.75. But "sentenced deportable aliens," among others, are not required to participate in the literacy program and may not be disciplined for their lack of participation. 28 C.F.R. §§ 544.71(a)(3), 544.75.

Rodriguez is serving a 240-month term of incarceration following his conviction for conspiracy to distribute 500 grams or more of methamphetamine mixture and cocaine. (Doc. 5-1, p. 7.) He was sentenced on May 2, 2003, but has a projected release date of July 19, 2020, via good conduct time release, to be followed by 10 years of supervised release. (Id. at pp. 6–9.) The Bureau of Immigration and Customs Enforcement ("ICE") has issued a detainer against

---

[1] In fact, an inmate is considered "to be making satisfactory progress toward earning a GED credential or high school diploma unless" the inmate refuses to enroll in this literacy program, commits a prohibited act during the program, or withdraws from the program. 28 C.F.R. § 544.73(b)(1)(i)–(iii).

2

Rodriguez, but has not issued a final order of deportation. (Id. at p. 3.) While Rodriguez originally participated in the BOP's literacy program, he withdrew from that program on September 29, 2008, and did not obtain a diploma or GED. (Doc. 1-1, p. 2.) Because Rodriguez voluntarily withdrew from the literacy program and is no longer making progress towards a high school diploma or GED, the BOP is only awarding him 42 days of good conduct time credit annually. (Id.)

Rodriguez challenges this decision and argues that he should be given 54 days' good conduct time annually because he is a deportable alien and, therefore, does not have to participate in the literacy program. (Doc. 1, p. 2.) He also contends that he has already obtained more than "808 hours of educational programs." (Id.) Additionally, Rodriguez requests that the Court order ICE to issue a final order of deportation. (Id. at p. 5 ("I am only asking to the Court to tell ICE that [sic] give me the clear as a deportable alien that I am.").)

In his Motion to Dismiss, Respondent first argues that the Court should dismiss Rodriguez's Petition because the Court does not have jurisdiction to review the BOP's calculation of Rodriguez's good conduct time. (Doc. 5, pp. 3–4.) Additionally, Respondent contends that the BOP correctly calculated Rodriguez's good conduct time.

## DISCUSSION

**I.   Whether this Court has Jurisdiction to Review the BOP's Calculation of Rodriguez's Good Conduct Time**

Respondent argues that Congress, through 18 U.S.C. § 3625, precluded courts from reviewing BOP decisions made under the authority vested to the BOP by Title 18, Chapter 229, Subchapter C. (Doc. 5, p. 3.) Specifically, Respondent maintains, "[a]lthough BOP's actions ordinarily may be reviewed through a habeas corpus proceeding, see 5 U.S.C. § 703, Congress precluded judicial review of BOP's decisions made under the authority vested to it by Title 18,

3

Chapter 229, Subchapter C." (Id. at p. 3 (citing 18 U.S.C. § 3625).) Because the BOP receives its authority to award good conduct time from 18 U.S.C. § 3624(b), Respondent contends that the Court cannot review decisions regarding Rodriguez's good conduct time made pursuant to that authority. (Id. at pp. 3–4.) Rodriguez does not respond to this argument at all in his response to the Motion to Dismiss.

Under the Administrative Procedure Act ("APA"), habeas corpus may be used to challenge a BOP action. See 5 U.S.C. § 703. However, in 18 U.S.C. § 3625, Congress specified that the sections of the APA governing judicial review, 5 U.S.C. §§ 701–706, were inapplicable to "the making of any determination, decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626. The Eleventh Circuit has further indicated that this lack of jurisdiction applies even in a Section 2241 habeas action unless the petitioner is challenging the underlying rules and regulations that establish the criteria governing the BOP's decision-making process. Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge BOP's discretionary determinations made pursuant to [Title 18, Chapter 229, Subchapter C] would be inconsistent with the language of 18 U.S.C. § 3625."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions."). Thus, where Congress by statute has precluded judicial review of an agency decision, a court's review is limited to whether the agency has acted outside its statutory limits or has violated the Constitution. See Webster v. Doe, 486 U.S. 592, 597, 603 (1988); Santiago-Lebron v. Fla. Parole Comm'n, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); Paradis v. Keller, 2011 WL 2790480, *4 n.3 (N.D. Ga. June 13, 2011); Klatch v. Rathman, No. 1:13–CV–01452–WMA,

2014 WL 537021, at *11 (N.D. Ala. Feb. 10, 2014). Additionally, where a challenge concerns a BOP program statement, courts give the BOP "some deference" when determining whether the program statement is a reasonable implementation of the BOP's relevant statutory authority. Cook, 208 F.3d at 1319–20; Santiago-Lebron, 767 F. Supp. 2d at 1352–53; Barr v. United States, No. 4:16cv108/WS/EMT, 2016 WL 6841691, at *4 (N.D. Fla. Oct. 28, 2016), *report and recommendation adopted by* 2016 WL 6832635 (N.D. Fla. Nov. 18, 2016).

The BOP's decision regarding Rodriguez's good conduct time falls within the purview of 18 U.S.C. § 3625. Although Rodriguez contends, albeit mistakenly, that he is entitled to receive the full amount of good conduct time, (doc. 1, pp. 6–7), the BOP's decision on that matter is an adjudicative, discretionary determination and not a rulemaking one. "And that decision is not subject to judicial review." Cook, 208 F.3d at 1319. Moreover, even construing Rodriguez's claims liberally, he does not argue that the BOP acted outside of its statutory authority or violated the Constitution.[2] Consequently, 18 U.S.C. § 3625 entirely precludes judicial review of the BOP's challenged determination of Rodriguez's good conduct time credit.

For these reasons, the Court should **DISMISS** Rodriguez's Section 2241 Petition for lack of jurisdiction.

---

[2] If Rodriguez had argued that the BOP exceeded its authority or violated his right to due process, those arguments would still fail. Under the statutory scheme described above, Congress authorized the BOP to award an inmate such as Rodriguez good conduct time credit based on the inmate's progress towards a high school diploma or GED. Moreover, Rodriguez does not have a liberty interest in the twelve additional days of annual good conduct time credit that he seeks. Reyes-Morales v. Wells, 766 F. Supp. 2d 1349, 1358–59 (S.D. Ga. 2011) ("[N]either federal law nor the applicable regulations create a right to the GCT that Petitioner seeks to have applied to his sentence. . . . Therefore, Petitioner does not have a liberty interest in the 12 days per year of GCT that he seeks . . . ."). Additionally, Rodriguez has not alleged that he failed to receive adequate process. In fact, it appears that Rodriguez received sufficient process through the BOP's administrative remedy procedures. (Doc. 1, pp. 2–10); see also Reyes-Morales, 766 F. Supp. 2d at 1359 ("Even if Petitioner had a protected liberty interest in the GCT at issue, he was provided adequate process. He was notified that failure to participate in the Literacy Program would result in the loss of his annual GCT award, given ample opportunity to challenge the reduction in his GCT award through the administrative grievance procedures, and provided with a written explanation of why his grievances were denied at every step of the process.").

## II.     Whether the BOP Improperly Calculated Rodriguez's Good Conduct Time Credit

Even if the Court had jurisdiction to hear Rodriguez's claims, he fails to demonstrate that the BOP improperly calculated his good conduct time credit.

Rodriguez primarily argues that, because he is a deportable alien, he is entitled to 54 days of annual good conduct time regardless of his participation in the literacy program. However, Rodriguez confuses the requirements to be exempt from disciplinary action for non-participation in the literacy program with the requirements to receive 54 days of good conduct time. Rodriquez is correct that, due to his status as a "sentenced deportable alien," he was not *required* to attend the literacy program and could not be subjected to disciplinary action for opting out of it. 28 C.F.R. §§ 544.71(a)(3). However, giving Rodriguez 42 days of good conduct time as opposed to 54 days does not amount to disciplinary action. See Livengood v. Bureau of Prisons, 503 F. App'x 104, 106–107 (3d Cir. 2012). The maximum allowable award of good conduct time for an inmate failing to participate in the literacy program—and therefore not making progress towards a GED or diploma—is 42 days. 28 C.F.R. § 523.20(c)(2). Only alien inmates "subject to a final order of removal, deportation, or exclusion" may receive the full 54 days of good conduct time without making progress towards a GED or diploma. 28 C.F.R. § 523.20(d); (Doc. 5-2). As Rodriguez appears to admit, ICE has not issued a final order of removal, deportation, or exclusion as to him. (Doc. 1, p. 8 ("I pray this Honorable Court to demand ICE my deportable order . . . .").) In other words, Rodriguez is a sentenced deportable alien and was free to withdraw from the literacy program without fear of discipline, which he did. However, without a final deportation order—and without a high school diploma or GED—Rodriguez was not free to withdraw from the literacy program and still be eligible to receive 54 days' good conduct time. De La Cruz v. Zickefoose, 450 F. App'x 123, 125 (3d Cir. 2011) (inmate that is

6

not subject to a final order of removal, deportation, or exclusion is not entitled to 54 days of good conduct time when inmate was not making satisfactory progress towards high school diploma or GED); Argueta-Anariba v. Recktenwald, No. 14 CIV. 7847 LGS, 2014 WL 5644178, at *3 (S.D.N.Y. Nov. 4, 2014) (same).

Rodriguez also appears to argue that he should be given 54 days of good conduct time because he has obtained more than 240 instructional hours in the literacy program. (Doc. 1, p. 2.) However, Rodriguez again confuses the issues of avoiding disciplinary action and eligibility to receive 54 days' good conduct time. An inmate that is required to participate in the literacy program may withdraw after obtaining 240 hours, without fear of discipline, even if the inmate has not obtained a GED or high school diploma. 28 C.F.R. § 544.73(c) ("At the end of 240 instructional hours, ... the unit team ... shall meet with the inmate to encourage continued participation in the literacy program until the inmate earns a GED credential or high school diploma. At these meetings, the inmate may elect not to continue in the literacy program, and no disciplinary action will be taken."). However, absent some exception, the withdrawing inmate is not eligible to receive 54 days of good conduct time because he is no longer an inmate who "has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree." 18 U.S.C. § 3624(b)(1); 28 C.F.R. § 523.20(c)(2). Thus, once Rodriguez withdrew from the literacy program, the BOP was authorized by statute and regulation to reduce his annual good conduct time earning rate from 54 to 42 days. Livengood, 503 F. App'x at 106–07 (affirming reduction in good conduct time for inmate that had completed 573 instructional hours in program but subsequently withdrew from program without obtaining high school diploma or GED).[3]

---

[3] As Respondent points out, one judge has disagreed with this reading of the statutes and regulations and found that once an inmate completes 240 hours in the literacy program, the inmate is entitled to 54 days

For these reasons, should the Court reach the merits of Rodriguez's arguments, it should **DENY** his claims that the BOP miscalculated his good conduct time.

### III. Whether the Court has Jurisdiction to Order ICE to Issue a Final Order of Removal as to Rodriguez

Rodriguez impliedly concedes that without progress towards his GED or diploma, he cannot receive 54 days of good conduct time credit unless he receives a final order of removal, deportation, or exclusion. He does so by requesting that the Court order ICE to issue an order of deportation. (Doc. 1, p. 8.) Rodriguez contends that if the Court does not direct ICE to issue such an order, ICE will only do so fifteen days prior to his release date so that he cannot receive

---

of good conduct time credits even if the inmate withdraws without a degree or GED. (Doc. 5, p. 5 (citing Snider v. Daniels, 445 F. Supp. 2d 1233 (D. Or. 2006).) However, the court's brief order in Snider appeared to confuse the literacy program requirements for avoiding discipline with the requirements for obtaining maximum good conduct time. Additionally, as Respondent notes, it appears that every court that has cited Snider has distinguished or disagreed with the order and has followed the analysis that I recommend above. See, e.g., De La Cruz v. Zickefoose, 450 F. App'x 123, 127 (3d Cir. 2011) ("[A]n inmate who completes 240 hours of instruction can still be deemed to not be making satisfactory progress [for good conduct time purposes] if he withdraws from the GED program. In addition, Snider, a district court case from outside this Circuit, has not been routinely followed in other cases."); Argueta-Anariba, No. 14 CIV. 7847 LGS, 2014 WL 5644178, at *3; Holley v. Carter, No. 1:13CV173, 2014 WL 2532487, at *5 (N.D.W. Va. June 5, 2014) ("Therefore, the undersigned finds that the reasoning expressed by the Court in Snider is flawed and should not be applied by this Court."); Gallegos-Soto v. Adler, No. 1:10-CV-01037 AWI, 2011 WL 2708822, at *5 (E.D. Cal. July 11, 2011) ("[T]he BOP determined that eligible inmates must attend the program for 240 hours or be subject to disciplinary sanctions, and if the inmate does not achieve his GED within the 240 hours, the BOP offers good time credits to encourage further participation."); Martin v. Hogsten, No. CIV 08-338-ART, 2009 WL 33446, at *4 (E.D. Ky. Jan. 5, 2009) ("It makes no difference that [the inmate] accumulated more than 240 hours of instruction time before dropping out of the program in 2001; the regulations require that he continue making satisfactory progress toward a GED, not that he accumulate more than 240 hours of instruction time. [The inmate's] failure to make satisfactory progress means that he is not entitled to 54 days of GCT credit per year for the last seven years."); Holman v. Cruz, No. CIV. 08-647 RHK/JJK, 2008 WL 9428138, at *5 (D. Minn. Oct. 23, 2008), *report and recommendation adopted*, No. CIV. 08-647 RHK/JJK, 2008 WL 5244580 (D. Minn. Dec. 15, 2008) ("[T]he court's reasoning in Snider ignores the fact that the BOP issued Program Statement 5884.03, which specifically addresses the issue of earning GCT under the Prison Litigation Reform Act. Unlike BOP Program Statement 5350.28, which only addresses the requirement of taking 240 hours of instruction, BOP Program Statement 5884.03 addresses how many GCT credits are given when an inmate withdraws from the program (i.e., is not making satisfactory progress toward earning a GED credential or high school diploma)."); Couch v. Patton, No. CIV. A. 08-CV-9-HRW, 2008 WL 489329, at *3 (E.D. Ky. Feb. 20, 2008) ("As the BOP has noted, the petitioner was free to withdraw and suffer no resulting disciplinary sanction, but he cannot now claim that he is entitled to 54 days of GCT instead of 42 days of GCT.").

the full 54 days of annual good conduct time credit. (Id.) This Court does not have jurisdiction to hear this request. Pursuant to 28 U.S.C. § 2241(c), the Court may only issue a writ of habeas corpus to the petitioner's custodian, and Rodriguez is not in the custody of ICE. See Roberts v. INS, 372 F. App'x 921 (11th Cir. 2010) (filing of detainer, standing alone, did not cause incarcerated alien to come within custody of Department of Homeland Security ("DHS"), and thus, the court could not, through a writ of habeas corpus, order DHS to provide immediate disposition of deportation proceedings); Oguejiofor v. Att'y Gen. of the U.S., 277 F.3d 1305, 1308 n.2 (11th Cir. 2002) (filing of detainer, standing alone, does not cause a prisoner to come within the custody of DHS or ICE); cf. Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004) ("[T]he proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" (quoting 28 U.S.C. § 2242)). Moreover, under Section 2241, a federal court may only issue a writ of habeas corpus to a federal or state prisoner if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a)(c)(3). Rodriguez does not raise a statutory or constitutional basis for the Court to compel ICE to issue a final order of removal or deportation. See Gonzalez-Hernandez v. Holder, No. 3:12-CV-318 JCH, 2012 WL 1900029, at *2 (D. Conn. May 24, 2012) (petitioner seeking final order of removal not entitled to habeas relief because he does not allege any constitutional or statutory right to immediate deportation and court's Section 2241 jurisdiction does not extend to review of discretionary determinations by immigration authorities).

Even construing Rodriguez's Petition liberally as a petition for a writ of mandamus, his request must fail. See id. at *1 (court lacks jurisdiction to hear mandamus claim for final order of removal and deportation because petition does not seek to compel performance of nondiscretionary duty) (citing 28 U.S.C. § 1361; 8 U.S.C. § 1228(1)(3)(B); Duamutef v. INS,

9

386 F.3d 172, 180 (2d Cir. 2004)); Garcia-Cordero v. U.S. Dep't of Justice, No. CV 310-088, 2011 WL 1870208, at *1 (S.D. Ga. Apr. 20, 2011), *report and recommendation adopted*, No. CV 310-088, 2011 WL 1868748 (S.D. Ga. May 16, 2011) (court does not have jurisdiction under the Mandamus Act or APA to compel DHS to commence deportation proceedings); Linares v. Dep't of Children & Families, No. 2:05-CV-315-FTM29SPC, 2005 WL 3053208, at *2 (M.D. Fla. Nov. 14, 2005) ("Alternatively, even if the Court construes [the habeas petition] as seeking a Writ [of] Mandamus to compel the INS to finalize deportation proceedings against him, such relief is not available through a habeas corpus action."). Numerous other jurisprudential reasons, which the Court need not delve into here, prevent the Court from granting Rodriguez's request for a final order of deportation. See, e.g., Camilo-Montoya v. United States, 23 F.3d 394 (1st Cir. 1994) (mandamus petition for the government to commence deportation proceedings is "at a minimum, . . . premature" where government has ample time to complete deportation proceedings prior to completion of prison sentence); Giddings v. Chandler, 979 F.2d 1104, 1110 (5th Cir. 1992) (criminal aliens have no standing to compel INS to commence deportation proceedings).

For all of these reasons, the Court should **DISMISS** for lack of jurisdiction Rodriguez's request that the Court direct ICE to issue him a final order of removal or deportation.

**IV.    Leave to Appeal** *in Forma Pauperis*

The Court should also deny Rodriguez leave to appeal *in forma pauperis*. Though Rodriguez has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Rodriguez's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Rodriguez *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** Rodriguez's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Rodriguez leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Rodriguez and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 26th day of July, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA